IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| NOVACARE, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SELECTMARK, INC., a Delaware corporation, and SELECT MEDICAL, a Delaware corporation,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY<br><br>Case No. 2:11-CV-349 TS<br><br>Judge Ted Stewart |

This matter is before the Court on Defendants SelectMark and Select Medical's (collectively "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction.[1] Also before the Court is Plaintiff NovaCare's Motion for Jurisdictional Discovery.[2] For the reasons stated below, the Court will grant Defendants' Motion to Dismiss and will deny Plaintiff's Motion for Jurisdictional Discovery.

## I. BACKGROUND

Plaintiff is a Nevada limited liability company with its principal place of business in Murray, Utah. Defendant Select Medical is a Delaware corporation with its principal place of

---

[1] Docket No. 19.

[2] Docket No. 24.

business in Mechanicsburg, Pennsylvania. Defendant SelectMark, Inc. is a Delaware corporation with its principal place of business in Wilmington, Delaware.

Plaintiff is in the business of manufacturing, distributing, and selling dietary supplements using the trademarks NOVACARE and NOVA CARE. Plaintiff is owner by assignment of U.S. Trademark Registration No. 3,631,011 for the mark NOVA CARE for use in connection with dietary supplements.[3] Defendant Select Medical is in the business of providing health care services, including specialized medical rehabilitation services. Defendant SelectMark is a passive intellectual property company, which is, in turn, wholly owned by Select Medical. Defendant SelectMark is the owner of U.S. Trademark No. 1,635,791 for the mark NOVACARE for use in connection with health care services.[4] Defendant SelectMark is also owner of other registered NOVACARE trademarks.[5]

Defendants sent three separate cease-and-desist letters to Plaintiff asserting that Plaintiff's NOVA CARE trademark, when used in connection with dietary supplements, is likely to cause consumer confusion between Plaintiff and Defendants as to the source of the respective parties' goods and services. Therefore, Plaintiff brought this action to obtain an order declaring that its use of the NOVA CARE trademark does not and will not infringe Defendants' NOVACARE trademarks.

Defendants move to dismiss the Plaintiff's Complaint against it for lack of personal jurisdiction. Defendants argue that they have insufficient contacts with Utah to satisfy Utah's long-arm statute or the Due Process clause. Defendants also argue that Plaintiff's claims do not

---

[3] Docket No. 2, at 4.

[4] Docket No. 20, at 3; Docket No. 2, at 5-6.

[5] *Id.*

arise out of activities conducted by Defendants in Utah. Plaintiff asserts that Defendants' contacts are systematic, continuous, and satisfy traditional notions of fair play and justice. Plaintiff argues that even if it has not established a prima facie case for the existence of personal jurisdiction, it is entitled to conduct jurisdictional discovery so that it can "confirm that the Defendants' acts, taken as a whole, are sufficient to subject them to the jurisdiction of this Court."[6]

## II. LACK OF JURISDICTION

Plaintiff carries the burden of establishing personal jurisdiction over Defendants.[7] "'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[8] "It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[9]

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[10] "When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make

---

[6] Docket No. 34, at 3.

[7] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[8] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[9] *Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

[10] *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

a prima facie showing."[11] "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[12] The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction.

A.    GENERAL JURISDICTION

For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[13] A court should consider the following factors in determining the availability of general jurisdiction: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.[14] The activities must be continuous and systematic to justify a finding of general jurisdiction.[15]

Plaintiff asserts that Defendants' contacts with the state of Utah are significant because Defendants (1) operate an interactive website recruiting and hiring employees within the state of Utah for employment positions within the state of Utah; (2) have advertised their products

---

[11] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[12] *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

[13] *Soma*, 196 F.3d at 1295 (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[14] *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

[15] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

nationwide such that consumers everywhere recognize their brand; and (3) have purposefully directed cease-and-desist letters to corporate residents in Utah and demanded that Plaintiff assign all of its existing trademark rights to Defendants.[16]

First, Plaintiff alleges that Defendants' website is interactive in that "it allows residents of . . . Utah to search for jobs within . . . Utah, upload and edit their resume through the website, fill out a job application online, and/or otherwise contact the Defendants with respect to the job openings via the website."[17] Defendants argue that (1) the job search feature is not enough to support a finding of personal jurisdiction because it is not sufficiently interactive and (2) Select Medical Rehabilitation Services ("SMRS"), the entity behind the postings, is a Select Medical subsidiary and not a party to the case, and (3) SMRS assists non-party Trinity in recruiting personnel to provide rehabilitation services as employees of Trinity at two facilities owned and operated by Trinity.[18]

"Establishing jurisdiction through the Internet, or more specifically through a website, has been analyzed by some courts under a framework of three general categories lying along a sliding scale."[19] On one end of the scale is a situation where a defendant clearly does business over the Internet, such as entering into contracts which require the knowing and repeated transmission of files over the Internet.[20] Jurisdiction is proper in those cases.[21] On the other end

---

[16] Docket No. 25, at 18.

[17] *Id.* at 12.

[18] Docket No. 28, at 5-9.

[19] *Xactware, Inc. v. Symbility Solutions Inc.*, 402 F. Supp. 2d 1359, 1363 (D. Utah 2005) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997)).

[20] *Id.*

of the scale are passive websites that do little more than make information available to those who are interested.[22] A middle category encompasses interactive websites where a user can exchange information with the host computer.[23] In this category, whether jurisdiction is appropriate depends on the nature and level of activity.[24]

In *Pierce v. Hayward Industries*,[25] a prospective employee could apply for a job online, and receive a free gift for submitting an application. Applying the *Zippo* analysis, the court found the website was not sufficiently interactive to support a finding of personal jurisdiction.[26] The court reasoned that there was no transaction, purchase or sale, that could be consummated by means of the website.

In this case, Defendants are not selling products and users are unable to purchase products through the website. The website provides informational material. The only active feature is a job search function. Once an ideal job is located, a user is then allowed to upload a resume. As in *Pierce*, this single action falls on the less active side of the *Zippo* scale.

Further, the entity behind the Utah job postings is a Select Medical subsidiary—SMRS. "[A] parent company has a separate corporate existence and is treated separately from the

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] 2006 WL 3242274 (E.D. Pa., Nov. 6, 2006).

[26] *Id.* at *7; *see also iAccess v. WEBcard Technologies, Inc.*, 182 F. Supp. 2d 1183 (D. Utah 2002) (holding that a minimally interactive website with only a single sale to a Utah resident was not sufficient to establish personal jurisdiction over the defendant in Utah. This Court found the defendant had consummated no transactions, made no deliberate or repeated contacts, and had no "hits" on its website from Utah users).

subsidiary in the absence of circumstances justifying disregard of the corporate entity."[27] To attribute a subsidiary's forum contacts to the parent company, the plaintiff must show that the parent company "completely controls" the subsidiary.[28]

In *R & K Lombard Pharmacy Corp. v. Medical Shoppe International, Inc.*,[29] plaintiffs claimed that Cardinal Health had sufficient contacts with Missouri to support a finding of personal jurisdiction. First, Plaintiffs argued that the business cards used by employees working for a subsidiary company, MSI, in Missouri, indicated that MSI is a "Cardinal Health company." Second, Plaintiffs asserted that the listings for jobs with "Cardinal Health" in Missouri on Monster.com and Cardinal Health websites were evidence that Cardinal Health conducted business in Missouri and sought to control matters pertaining to relationships with subsidiaries.[30]

The court found these contacts were insufficient to establish that Cardinal Health dominated and controlled the daily operations of its subsidiaries to the extent that their corporate existence should be disregarded.[31] The court determined that the job postings for employment positions on the Cardinal Health website did not indicate that the job was for employment with Cardinal Health. Instead, the applications were directed to the appropriate Cardinal Health operating subsidiary. Also, the job postings that Cardinal Health submitted for positions with its subsidiaries mention the name "Cardinal Health" only because it is the common brand under which most of the companies go to market. Therefore, the court held that plaintiffs' evidence did

---

[27] *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1363 (10th Cir. 1974).

[28] *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1021 (10th Cir. 1990).

[29] 2008 WL 648509 (E.D. Mo. March 5, 2008).

[30] *Id.* at *4.

[31] *Id.*

not overcome the presumption of corporate separateness and that basing the assertion of jurisdiction over Cardinal Health on the acts of its subsidiaries would offend due process.[32]

Here, Defendants do not exercise enough control over SMRS to overcome the presumption of corporate separateness. The companies are headquartered in separate states, have distinct corporate by-laws, maintain separate books and finances, and enter into contracts in their own names.[33] Defendants are not involved in the daily operations of SMRS, nor do they employ or pay the wages of SMRS employees.[34]

Furthermore, the job postings in question are for employment with Trinity, not SMRS. SMRS aids Trinity in recruiting personnel to provide rehabilitation services as employees of Trinity at Trinity's own facilities.[35] SMRS has no offices or facilities within Utah. Therefore, Defendants' reliance on an affidavit that states that none of their "subsidiaries operate facilities or provide services in Utah" is not inconsistent with other evidence.[36] These contacts are not sufficiently continuous and systematic to invoke general jurisdiction.

Next, Plaintiff alleges that Defendants have expended millions of dollars in national advertising related to their NOVACARE brand and, in doing so, have marketed and sold products through GNC retail stores, including stores located in Utah.[37] Defendants counter by

---

[32] *Id*. at *5.

[33] Docket No. 28, at 6.

[34] *Id.*

[35] *See* Docket No. 29.

[36] *Id.* at 2.

[37] Docket No. 25, at 12.

offering an affidavit that states that Defendants do not advertise the NOVACARE trademark in Utah.[38]

"[T]he mere placement of advertisements in nationally-distributed publications cannot be regarded as 'continuous and systematic' in nature."[39] Such advertising does not "rise to the level of purposeful contact."[40] Moreover, the Tenth Circuit has been clear that national advertisement "by itself" is "not always sufficient" to establish minimum contacts, particularly where there is nothing in the record regarding the extent of the subscriptions in the forum state.[41] Here, there is no evidence that Defendants advertised or solicited sales from Utah residents. Without evidence that Defendants deliberately directed such advertisements to Utah, the advertisements do not support a contention that Defendants purposefully availed themselves of the privilege of conducting activities in Utah.

Lastly, Plaintiff asserts that the cease-and-desist letters "sufficiently demonstrate a nexus between [Plaintiff's] claims and Defendants' contacts and that Defendants availed themselves of the laws of the state of Utah."[42] Defendants argue that demand letters are insufficient to justify personal jurisdiction of any sort.

---

[38] Docket No. 29.

[39] *Doering ex rel. v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001).

[40] *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994).

[41] *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir. 1991).

[42] Docket No. 25, at 18.

In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,[43] the court stated that "doing business with a company that does business in [the forum state] is not the same as doing business in [that state]" and is insufficient to establish jurisdiction.[44] In that case, the court found insufficient contacts to justify personal jurisdiction over the defendants where the defendant only sent cease-and-desist letters into the forum state and had licensees doing business in the forum state. Similarly, this Court has held that "the mere act of mailing a cease-and-desist letter into Utah . . . is not sufficient contact with the state to constitutionally subject the [defendant] to suit here."[45] The act of sending cease-and-desist letters is not sufficient, in itself, to confer jurisdiction in this case.

Taking the factors together, the Court finds that there are insufficient minimum contacts to justify exercising general jurisdiction under the due process test. Defendants did not direct their general business activities at Utah.

B.  SPECIFIC JURISDICTION

When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction in cases that "arise out of or relate to those activities."[46] In order for the Court to find specific jurisdiction, there must be "some act by

---

[43] 148 F.3d 1355 (Fed. Cir. 1998).

[44] *Id*. at 1361.

[45] *Overstock.com, Inc. v. Furnace Brook, LLC*, 420 F. Supp. 2d 1217, 1218 (D. Utah 2005).

[46] *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[47]

Plaintiff argues that Defendants' contacts with Utah are sufficient to justify the exercise of specific jurisdiction. Plaintiff asserts that specific jurisdiction exists because, through the "manufactur[ing] and sale of its nutritional supplement products through GNC stores in Utah, Defendants have created a continuing obligation with Utah."[48] Defendants contend that they have never entered into an agreement with GNC.

Defendant Select Medical did purchase HealthSouth, an entity that partners with GNC. However, in accordance with the Stock Purchase Agreement, Select Medical did not purchase, acquire, or otherwise obtain any right, title, or interest in any agreement between HealthSouth Corporation and GNC related to the distribution of private labeled nutritional supplements or use of HealthSouth's name.[49] Based on this Agreement, there is no evidence to indicate that the sale of HealthSouth products in Utah GNC stores is a basis for specific jurisdiction.

C.  JURISDICTIONAL DISCOVERY

In response to the personal jurisdiction argument in Defendants' Motion to Dismiss, Plaintiff requests, in the alternative, that the Court should "at least grant Plaintiff sixty days to take jurisdictional discovery because the jurisdictional facts are controverted and a more satisfactory showing of the facts may be necessary."[50]

---

[47] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[48] Docket No. 25, at 15.

[49] Docket No. 28, at 11; *see also* Docket No. 29, at 3-4.

[50] Docket No. 24, at 2.

A trial court has discretion to refuse to grant discovery on the limited basis of personal jurisdiction.[51] A court may deny jurisdictional discovery where the plaintiff has failed to meet its burden of making a threshold prima facie case of personal jurisdiction.[52] Plaintiff has not shown how discovery into Defendants' website or other activities would be productive or useful in determining the issue of jurisdiction. For the reasons set forth above, the Court finds that Plaintiff has failed to meet its burden of establishing personal jurisdiction. Therefore, the Court will deny Plaintiff's Motion for Jurisdictional Discovery.

## IV. CONCLUSION

It is therefore ORDERED that Defendants' Motion to Dismiss (Docket No. 19) is GRANTED. It is further ORDERED that Plaintiff's Motion for Jurisdictional Discovery (Docket No. 24) is DENIED. The clerk of the Court is directed to close this case forthwith.

DATED   November 16, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[51] *See World Wide Ass'n. of Specialty Programs & Schs. v. Houlahan*, 138 Fed. Appx. 50, 2005 WL 1097321 (10th Cir. 2005) (unpublished opinion); *Health Grades v. Decatur Mem'l Hosp.*, 190 Fed. Appx. 586, 589, 2006 WL 1704454 (10th Cir. 2006) (unpublished opinion).

[52] *McNeill v. Geostar*, 2007 WL 1577671, at *3 (D. Utah, May 29, 2007).